THE PEOPLE *ex rel.* Charles S. Deneen

*v.*      ˙

ROBERT M. SIMON.

˙

*Opinion filed October 24, 1898—Rehearing denied December 20, 1898.*

| 176 | 165 |
|-----|-----|
| 194 | 7 34 |
| 176⁻ | 165 |
| 207 | 362 |
| '176 | 165 |
| 211 | 488 |

1. REGISTRATION OF TITLES—*register's duties on initial registration are ministerial.* Under the Conveyance act of 1897, commonly known as the "Torrens Law," (Laws of 1897, p. 141,) the register's duties upon initial registration are ministerial only, the ownership of the land being determined by a court of competent jurisdiction.

2. SAME—*sections 47 and 60 do not confer judicial power on register.* Sections 47 and 60 of the Torrens law of 1897, relating to the transfer of land after registration and to the registering of liens and claims, do not confer strictly judicial power upon the register, the discretionary power which he thus exercises being *quasi* judicial, and incidental to the proper performance of his ministerial duties.

3. SAME—*effect of provision concerning transfer of trust property.* The power conferred by sections 68 and 69 of the act of 1897, whereby the register's transfer of trust property, upon the judgment of the court or upon his own concurrence in the opinion of the examiners that the transfer is in accordance with the terms of the trust, is made conclusive of such fact in favor of the transferee, does not render the act unconstitutional, as it merely abrogates a rule of equity which courts˙ are not now inclined to follow.

4. SAME—*provisions for initial registration considered with reference to notice to parties.* The fact that a provision of the Torrens law of 1897, concerning the proceedings for initial registration, may be construed as rendering it possible for a judgment to be obtained against a resident of the State upon mere constructive notice, does not render the entire act unconstitutional, as the act may be given practical effect without such provision.

5. SAME—*legislature has power to change mode of transferring title.* So long as vested rights are not disturbed, the legislature may, at any time, change the tenure upon which land is held, may alter the conditions under which it may be alienated and modify the rules of evidence by which title is to be determined, and may make compliance with the law, as to future transactions, compulsory.

6. SAME—*Torrens law does not allow taking of property without due process of law.* The Torrens law of 1897, in providing that vested rights in real property shall be subjected to an adjudication in a court of competent jurisdiction, upon due notice, in order that the true state of title may be ascertained and declared, and that thereafter the tenure of the owner, the right of transfer and incumbrance, and all rights subsequently accruing, shall be determined

by the provisions of that law, is not unconstitutional, as authorizing the taking of private property without due process of law.

7. SAME—*section 26 of Torrens law of 1897 construed.* Section 26 of the Torrens law of 1897, in so far as it attempts to bar vested rights after the expiration of two years from the rendering of a decree in a suit to which the holders of such rights were not parties, cannot be upheld, but may be upheld as a limitation law limiting the time within which one who has a mere right of action shall bring suit.

8. SAME—*Torrens law is not a special law, nor does it delegate legislative power.* The provision of the Torrens law of 1897 that it shall take effect only after a favorable vote by counties is not a delegation of legislative power, nor does it make the act special or local in character. (*People* v. *Hoffman,* 116 Ill. 587, followed.)

9. In upholding the constitutionality of the Torrens law of 1897, the court merely determines that the act does not so violate the constitution as to render it void, and leaves the construction of provisions not going to the validity of the entire law until the necessity therefor arises.

BOGGS, J., dissenting.

APPEAL from the Criminal Court of Cook county; the Hon. CHARLES G. NEELEY, Judge, presiding.

PENCE & CARPENTER, and SHOPE, MATHIS, BARRETT & ROGERS, (CHARLES S. DENEEN, State's Attorney, of counsel,) for appellant.

HARVEY B. HURD, GEORGE W. SMITH, THEODORE SHELDON, and OLIVER & MECARTNEY, (ROBERT S. ILES, of counsel,) for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This action originated in the court below upon an information in the nature of a *quo warranto* against appellee, requiring him to show by what authority of law he was exercising the powers and duties of the office of registrar of titles in and for the county of Cook. In answer to the information the defendant set up the act of the legislature entitled "An act concerning land titles," approved and in force May 1, 1897, commonly known as the "Torrens law." (Laws of 1897, p. 141.) The relator

filed a general demurrer to this answer, which was over-
ruled and the information dismissed. The ground of the
demurrer was, that the act under which the respondent
sought to justify is unconstitutional and void, and that
is the question now presented for our decision.

The act is very voluminous and some of its provisions
are not skillfully drafted. Its validity is attacked on
numerous grounds, and the briefs and arguments on either
side are very extended. We will endeavor to consider the
objections raised to the law in the order in which they
are discussed by counsel.

It is first insisted that the act confers judicial powers
upon the registrar of titles, or upon him and the examin-
ers of title, in violation of the constitution of this State.
A somewhat similar act passed in 1895 was held invalid
on that ground in *People* v. *Chase*, 165 Ill. 527. By the pro-
visions of the law of 1895 the registrar was clothed with
power to determine the ownership of land when applica-
tion was made for the initial registration thereof, and to
issue his certificate accordingly. The present act pro-
vides that the ownership shall be determined by a decree
in equity entered in a court of competent jurisdiction,
upon which decree the registrar shall issue the first cer-
tificate of registration. In this regard his duties under
the present law are clearly ministerial only, and the fatal
objection to the former act is therefore removed.

But it is insisted that the law is still vulnerable, in
that it vests judicial power in the registrar in the per-
formance of his duties as to subsequent registrations.
Waiving the question whether this would, if true, neces-
sarily vitiate the whole act, is the position tenable? Like
a mere recorder, the registrar is required to file all deeds,
mortgages, leases and other instruments affecting the
title to land, and make proper notations upon the instru-
ments and upon the record. He is to keep a record to be
known as the "Register of Titles," in which must be en-
tered the original and all subsequent certificates of title,

and such notations as to liens, incumbrances and the like as are requisite to show the true condition of the title. When any instrument is filed with him which is intended to create a charge, lien or incumbrance upon land, it is made his duty, by section 60, to enter a memorial upon the register and also upon the original certificate. Thus far his duties are clearly and simply ministerial. But it is contended this section 60 authorizes him to determine the validity of liens, incumbrances or charges, and the argument is, that this is an exercise of judicial power, which, under our constitution, can be conferred upon no officer or tribunal save those which belong to the judicial department. The language of the section applicable to this question is as follows: "It appearing to the registrar that the person intending to create the charge has the title and right to create such charge, and that the person in whose favor the same is sought to be created is entitled by the terms of this act to have the same registered, he shall enter upon the proper folium of the register, and also upon the owner's certificate, a memorial of the purport thereof," etc. It will be noticed that the provisions in case of a transfer of the property are substantially the same. Section 47 says: "Upon its being made to appear to the registrar that the *transferee* [evidently intending *transferrer*] has the title or estate proposed to be transferred and is entitled to make the conveyance, and that the transferee has the right to have such estate or interest transferred to him, he shall make out and register as hereinbefore provided, a new certificate," etc. Article 3 of the constitution of 1870 reads as follows: "The powers of the government of this State are divided into three distinct departments,—the legislative, executive and judicial; and no person or collection of persons, being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted." (Rev. Stat. p. 60.) The question therefore is, can the legislature de-

volve the duties named, upon an officer not a member of the judicial department?

That the duties mentioned are judicial in their nature may be admitted, but it does not necessarily follow that their exercise is prohibited by the constitutional provision to all but officers belonging to the judicial department. Numerous instances may be cited, as is done in *Owners of Lands* v. *People,* 113 Ill. 296, (referred to in *People* v. *Chase, supra,*) where executive and legislative officers are authorized to exercise powers which in a sense are judicial, and the laws imposing such duties held not to be in violation of the constitutional provision quoted. These duties or powers are generally and properly termed *"quasi* judicial," to distinguish them from those which are judicial in the sense of belonging to the judicial department exclusively. In theory all governmental power is divided into the three named divisions, and upon a casual consideration the division would seem to present no difficulty, but in the practical application of the principles involved courts have been compelled to observe that the line of demarkation between the exclusive powers of the three departments is far from clear. (6 Am. & Eng. Ency. of Law,—2d ed.—p. 1007.) Judge Cooley, in his work on Constitutional Limitations on the Legislative Branch of the Government, has given a definition of "judicial power." It is this: "The power which adjudicates upon and protects the rights and interests of individual citizens, and to that end construes and applies the laws." As a general definition of the functions of the judicial department it is sufficiently accurate, and we adopted it in the case of *People* v. *Chase, supra.* We then thought, and are of the opinion still, that it was applicable to that case, the functions of the registrar, under the act of 1895, being not *quasi* judicial, merely, but strictly so, and such as are usually exercised by the courts alone, constituting the exercise of judicial power within the constitutional prohibition. Under the present act his duties more nearly

resemble those frequently exercised by members of the executive department.

The definition given by Judge Cooley does not attempt to mark the line between those *quasi* judicial functions which may be vested elsewhere, and those strictly judicial, which can be reposed nowhere save in the courts, and for that reason it cannot be properly adopted in this case. As we said in another case: "It may in many cases be a matter of difficulty to determine the precise line which divides the executive and judicial functions. It has been said that where the functionary hears, considers and determines, then he performs judicial acts. This definition is not strictly accurate. * * * It embraces cases that are not judicial, and hence is too comprehensive." (*Donahue* v. *Will County*, 100 Ill. 94, on p. 108.) And appreciating the difficulty of defining the limits of the several departments of government we also said in an earlier case: "Nevertheless, when we come to apply them to actual controversies growing out of the varied relations which the citizens sustain to the State and to one another, we encounter doubts and difficulties of the gravest character. Just where the dividing line is to be drawn between judicial and legislative power, with respect to certain subjects, often presents questions about which enlightened courts and eminent jurists widely differ. So while the powers of courts seem so very simple and clearly defined, yet in the application of them to actual cases their proper limits are often difficult to determine." (*Dodge* v. *Cole*, 97 Ill. 338, on p. 357.) Also: "The first and second sections of the first article of the constitution (of 1818) divide the powers of governments into three departments,—the legislative, executive and judicial,—and declare that neither of these departments shall exercise any of the powers properly belonging to either of the others, except as expressly permitted. This is a declaration of a fundamental principle, and, although one of vital importance, it is to be understood in a lim-

ited and qualified sense. It does not mean that the legislative, executive and judicial power should be kept so entirely distinct and separate as to have no connection or dependence, the one upon the other; but its true meaning, both in theory and practice, is, that the whole power of two or more of these departments shall not be lodged in the same hands, whether of one or many." *Field* v. *People*, 2 Scam. 79, on p. 83.

Judge Story, in his work on the Constitution, says: "But when we speak of a separation of the three great departments of government, and maintain that their separation is indispensable to public liberty, we are to understand this maxim in a limited sense.  It is not meant to affirm that they must be kept wholly separate and distinct and have no common link of connection or dependence, one upon the other, in the slightest degree.   The true meaning is, that the whole power of one of these departments should not be exercised by the same hands which possess the whole power of either of the other departments, and that such exercise of the whole would subvert the principles of a free constitution." (1 Story on the Const.—5th ed.—sec. 525.) "Notwithstanding the memorable terms in which this maxim of a division of powers is incorporated into the bills of rights of many of our State constitutions, the same mixture will be found provided for, and, indeed, required, in the same solemn instruments of government.  *  *  *  Indeed, there is not a single constitution of any State in the Union which does not practically embrace some acknowledgment of the maxim and at the same time some admixture of powers constituting an exception to it." Ibid. sec. 527, p. 395.

In the case of *Murray's Lessee* v. *Hoboken Land and Improvement Co.* 18 How. 272, in discussing whether the issuing of a distress warrant by the solicitor of the treasury was the exercise of executive or of judicial power, the Supreme Court of the United States (p. 280) say: "It is not sufficient to bring such matters under the judicial

power that they involve the exercise of judgment upon law and fact. * * * That the auditing of the accounts of a receiver of public moneys may be, in an enlarged sense, a judicial act, must be admitted. So are all those administrative duties the performance of which involves an inquiry into the existence of facts and the application to them of rules of law. * * * We do not doubt the power of Congress to provide by law that such a question shall form the subject matter of a suit in which the judicial power can be exerted. The act of 1820 makes such a provision for reviewing the accounting officers of the treasury, but until it is reviewed it is final and binding; and the question is, whether its subject matter is necessarily, and without regard to the consent of Congress, a judicial controversy, and we are of opinion it is not."

From these authorities it is apparent that the mere fact that the registrar is required by this act to inquire into the existence of certain facts and to apply the law thereto in order to determine what his official conduct shall be, and that his action may affect private rights, does not constitute the exercise of judicial power, strictly speaking. It is not the intention of these two sections (60 and 47) to provide a tribunal for the adjudication of disputes concerning land titles. The primary purpose is the issuing of the certificate, and the exercise of the judgment of the registrar is incidental. The prohibition in question "has never been held to apply to those cases where judgment is exercised as incident to the execution of a ministerial power." (*Owners of Lands* v. *People, supra.*) The powers exercised by the registrar under this law are analogous to those exercised by the commissioner of patents. A power of decision is given to that officer in many matters, not only between the government and the patentee, but also between different claimants, as to priority, patentability and like matters, and in the performance of these duties it has never been considered that he was encroaching upon the judicial domain.

They are also, in a measure, like the duties performed by officers of the land office. Duties of a similar nature, involving judgment or discretion and the application of the law to the facts, are devolved both under the State and Federal laws upon many other executive officers, legally. In some instances it is even held that in the exercise of such judgment the officer is free from judicial interference. But in the case of the registrar this act provides that any person feeling himself aggrieved by the act or neglect of this officer, in any matter pertaining to the duties required of him, may file a petition in equity in the proper court, making the registrar and other persons interested parties defendant, and that the court may proceed therein as in other cases in equity, and may make such order or decree as shall be according to equity in the premises and the purport of the act. This, with the well known jurisdiction of the courts in *mandamus*, injunction, rescission, cancellation, bills of relief, and the like, will effectually protect the citizen against any arbitrary conduct on the part of the officer.

Recurring to the duties of the registrar, we find that in case of a tax sale or judgment, or levy under an attachment or execution, or in case of a mechanic's lien, the registrar, upon the filing of the proper certificate, enters a memorial thereof upon his record, and in case the lien ripens into a title the former certificate of title is canceled and a new one issued to the proper party. These duties do not differ in character from those already mentioned, and what has been said is equally applicable thereto also. Particular stress, however, is laid by counsel for appellant upon the contention that the duties of the registrar as to the subsequent registration of land held in trust upon conditions or limitations, are the exercise of judicial power, in violation of the terms of the constitution. The act requires, where the land is subject to a trust, condition or limitation, that the original certificate issued shall contain the words "in trust," "upon

conditions" or "with limitations," as the case may be. When such land is to be transferred, it is provided that the registrar shall not issue a new certificate, nor shall any transfer of or charge upon or dealing with the land be made, unless pursuant to the order of some court, or upon the written opinion of the two examiners that such transfer, charge or dealing is in accordance with the true intent and meaning of the trust, condition or limitation, whereupon he shall proceed to register the title, and such registration is to be conclusive in favor of the grantee, and those claiming under him in good faith and for a valuable consideration, that such transfer, charge or other dealing is in accordance with the true intent and meaning of the trust, condition or limitation. (Secs. 68, 69.) If the registration be made pursuant to the order or finding of a court of competent jurisdiction the acts of the registrar are purely ministerial, but if made upon the opinion of the two examiners he is required to exercise a judgment of his own. These duties do not differ materially from those already examined, except that here the decision is made conclusive in favor of the person taking the transfer in good faith and for a valuable consideration, that the transfer or charge is in accordance with the true intent and meaning of the trust, condition or limitation. This does no more than abrogate the rule in equity which requires the purchaser of trust property to see to the application of the purchase money, and the inclination of courts now is to withdraw from that rule. We recently said, quoting from Judge Story: "These are some of the most important and nice distinctions which have been adopted by courts of equity upon this intricate topic, and they lead strongly to the conclusion, to which not only eminent jurists but also eminent judges have arrived, that it would have been far better to have held in all cases that the party having the right to sell had also the right to receive the purchase money, without any further responsibility on the part of the purchaser as to its ap-

plication." (*Seaverns* v. *Presbyterian Hospital*, 173 Ill. 414, on p. 424.) This statute also changes the rule of law as to notice. We know of no reason why the legislature might not change either or both of these rules without violating the constitution. Certainly, as to the future all trusts could be entirely abolished by the legislature, as was done in cases of uses by the Statute of Uses. As the law now stands, cases frequently arise in which *bona fide* purchasers take property free from existing trusts, and are not held bound to see to the application of the consideration.

The second point insisted upon in the argument is, that the provisions of the act permit the taking of private property without "due process of law." In the initial registration the provisions are for an application to a court of chancery, and that the fee must be first registered. To this application the following persons are to be made defendants: The occupant, if the land is occupied by any other person than the applicant; the holder of any lien or incumbrance; other persons having any estate or claiming any interest in the land in law or in equity, in possession, remainder, reversion or expectancy. (Sec. 11.) All other persons are to be made parties defendant by the name and designation of "all whom it may concern." (Sec. 16.) Summons is to issue against all persons mentioned as defendants, and is to be served as in other cases in chancery. Notice is also to be published and mailed to such defendants substantially as in other chancery cases, and the court may direct further notice to be given. (Secs. 19, 20, 21.) Upon a failure to answer default may be entered, and upon the hearing a decree entered finding in whom the title is vested, and declaring the same subject to such liens, incumbrances, trusts or interests, if any, as are shown to exist, and directing the registration to be made. (Secs. 23, 25.) The exception taken to these provisions is, that they authorize judgment to be taken against a resident of the State

upon mere constructive service. It is certainly funda-
mental that no man shall be condemned unheard or with-
out notice. While a substituted service is permitted in
some instances, particularly in case of non-residents, this
is because of the necessities of the case. The act does
contemplate, in some contingencies at least, actual per-
sonal service, and the general law provides for publica-
tion as to unknown owners and persons in interest, and
non-residents. An applicant may proceed in this way,
and in strict accordance with the act obtain a decree or
finding as to his title which will be binding beyond all
question, so that even if the proper construction of the
provision were that it attempted to authorize judgment
against a resident notified only by publication, yet the
law can be given practical effect, in which event only the
particular provision would fail, and not the whole law.

It is further insisted, that by proceedings *subsequent*
to the initial registration an owner may be deprived of
his property without due process of law. In the consid-
eration of this point it must be remembered that the right
to alienate or inherit property is always dependent upon
the law. So long as vested rights are not disturbed the
law may at any time change the tenure upon which land
is held, and may alter the conditions under which it may
be alienated and modify the rules of evidence by which
the title is to be determined. The true theory of this act,
as we understand it, is, that all holders of vested rights
shall be subjected to an adjudication in a court of com-
petent jurisdiction, upon due notice, in order that the
true state of the title may be ascertained and declared,
and that thereafter the tenure of the owner, the right of
transfer and incumbrance, and all rights subsequently
accruing, shall be determined in accordance with the
rules now prescribed. "A State may, by statute, pre-
scribe the remedies to be pursued in her courts, and may
regulate the disposition of the property of her citizens
by descent, devise or alienation." (3 Washburn on Real

Prop.—4th ed.—p. 187.) "The right of ownership which an individual may acquire must therefore, in theory, at least, be held to be derived from the State, and the State has the right and power to stipulate the conditions and terms upon which the land may be held by individuals." (Tiedeman on Real Prop.—2d ed.—sec. 19.) "The power of the State to regulate the tenure of real property within her limits, and the modes of its acquisition and transfer, and the rules of its descent, and the extent to which a testamentary disposition of it may be exercised by its owners, is undoubted." (*Arndt* v. *Griggs*, 134 U. S. 316, on p. 321.) "The power of the legislature in this respect, [as to changing the rules of evidence as to the burden of proof,] whether affecting proof of exisiting rights or as applicable to rights subsequently acquired or to future litigation, so long as the rules of evidence sought to be established are impartial and uniform in their application, is practically unrestricted." *Gage* v. *Caraher*, 125 Ill. 447, on p. 455.

It being true that the law may prescribe rules of property and rules of evidence by which the title is to be shown, we see no reason why the transfer of real estate may not be made in the way contemplated, and why it may not be made compulsory to make it in that way, if the legislature so determines.

In our view of the case the indemnity fund feature of the law need not be considered. The law can, as we think, stand and accomplish its purpose without it.

Objection is also made that by section 26 any person who has any interest in the land, whether personally served, notified by publication or not served at all, must, within two years after the entry of the decree, appear and file an answer, and that after the expiration of that term of two years the decree shall (with certain exceptions) be "forever binding and conclusive upon all persons." This provision seems to attempt to make a decree binding upon persons not parties to the suit, and if given effect literally, would deprive persons of vested rights

without due process of law. A limitation may be placed upon the time within which a person who has a mere right of action shall bring it, but "limitation laws cannot com-- pel a resort to legal proceedings by one who is already in the complete enjoyment of all he claims." (Cooley's Const. Lim. p. 366.) To the extent that the act attempts to transfer property without due process of law it cannot be upheld. On all parties to the suit properly before the court the decree may, after the lapse of two years, become conclusive and forever binding, and as to all who have merely a right of action the expiration of two years may complete the bar. Even though the language of this section may be broad enough to amount to an attempt to transfer an estate by the law or by decree, yet it is possible to carry out the purposes of the act without violating the constitution in the respect complained of. Such objectionable features, or those calling for construction, must be left to future legislation, or determination by the courts in cases where the conflict is apparent and the question directly involved.

We are also of the opinion that sections 26 and 40 can be sustained by construing them as a limitation law. "Whenever an act of the legislature can be so construed and applied as to avoid conflict with the constitution, and give to it the force of law, such construction will be adopted by the courts. Therefore, acts of the legislature in terms retrospective, and which, literally interpreted, would invalidate and destroy vested rights, are upheld by giving them prospective operation only, for, applied to and operating upon future acts and transactions only, they are rules of property, under and subject to which the citizen acquires property rights, and are obnoxious to no constitutional limitation, but as retroactive laws they reach to and destroy existing rights, through force of the legislative will, without a hearing or judgment of law. So will acts of the legislature having elements of limitation, and capable of being so applied and administered,

although the words are broad enough to, and do, literally read, strike at the right itself, be construed to limit and control the remedy, for as such they are valid, but as weapons destructive of vested rights they are void, and such force only will be given the acts as the legislature could impart to them." *Newland* v. *Marsh*, 19 Ill. 376.

The recent case of *State of Ohio* v. *Guilbert*, 47 N. E. Rep. 551, is relied upon by counsel for appellant in support of the position taken by them on both of the above points. We have given that case careful consideration. With its conclusion, viz., that the Ohio statute was unconstitutional, we agree, but what is said in argument cannot be adopted as applicable to this case. The main ground upon which that decision rests is, that the statute, in providing for the initial registration, attempts to give jurisdiction to the court without service of summons, and this, it is held, falls short of that due process of law guaranteed by the constitution. The only notice which that act required was to be given by the applicant himself, and in the application it was unnecessary to name any person claiming an adverse interest, as party defendant. On the other feature of the case, viz., as to what constitutes the exercise of judicial power, the opinion is not clear. In the reasoning on that point Judge Cooley's definition of judicial power is adopted, which we have seen does not serve to distinguish between such *quasi* judicial powers as may be properly exercised by executive or ministerial officers and those powers which belong solely to the judicial department.

The third point made against the law is, that the provision which says that the law shall take effect only after a favorable vote by counties, is an attempt to delegate legislative power; and the fourth is, that the law is not a general but special law. It is unnecessary to discuss these points. It is sufficient to say that both have been decided adversely to the contention of appellant in the case of *People* v. *Hoffman*, 116 Ill. 587. That decision has

become the rule of law in this State, and we see no sufficient reason for overruling it.

We are not impressed with the soundness of the objections to those sections of the statute which relate to the descent of lands on the death of a registered owner, and to the sale and mortgage of real estate belonging to minors or others under disability. They are, however, objections which do not go to the validity of the entire law. They involve a construction of those sections, and can only be satisfactorily determined if cases shall arise involving their validity. It would be alike impracticable and unprofitable to attempt now to give a construction to every provision of this law. The question here is, does the act violate the constitution so far as to render it void, and therefore furnish no justification for the exercise of the acts of the respondent challenged? In the determination of that question every reasonable doubt must be resolved in favor of the validity of the law.

We have endeavored to give the case that deliberate consideration its importance demands, and have reached the conclusion that the judgment of the criminal court should be affirmed.                *Judgment affirmed.*

Mr. JUSTICE BOGGS, dissenting.