[S. F. No. 4659.   In Bank.—April 5, 1907.]

CHARLOTTE ROBINSON, Petitioner, v. FRANK H. KERRIGAN, Judge of the Superior Court of the City and County of San Francisco, Respondent.

DETERMINATION OF LAND TITLES—TORRENS ACT—DECREE BASED ON PUBLICATION—CONSTITUTIONAL LAW—UNKNOWN OWNERS.—The act of March 17, 1897, entitled ''An act for the certification of land titles and the simplification of the transfer of real estate,'' commonly known as the ''Torrens Law,'' which provides for a proceeding whereby an owner of land, upon a petition filed by him in the superior court, of the hearing of which notice must be given by four weeks' publication in some designated newspaper of general circulation, and also served in the manner prescribed for the

service of summons in a civil action, either personally or by
publication, as the facts may require, upon certain designated classes
of known interested parties, may obtain a decree determining his
title, which decree, when it becomes final, is made conclusive of the
title and estate therein declared and described, against the rights
of all persons, known or unknown, whether named in the proceed-
ings or not, is not unconstitutional on the ground that persons not
named in the proceeding and unknown, who may really own the
land, are given no notice except that afforded by the four weeks'·
publication required by the act.    The act does not deprive such
unnamed and unknown owners of property without due process of
law, nor withhold from them the equal protection of the law.

ID.—CONTROL OF STATE OVER LAND—PROCEEDING IN REM.—The state has
full control over the subject of the mode of transferring and estab-
lishing titles to property within its limits.    For these purposes it has
power to provide a special proceeding, in the nature of a proceeding
*in rem,* to fix the *status* of the land and declare the nature of the
titles and interests therein, and the person or persons in whom such
titles and interests are at the time vested.    It may do this when-
ever it may be considered necessary, or likely to promote the general
welfare.

ID.—JUDICIAL AND ADMINISTRATIVE FUNCTIONS—POSSIBILITY OF AD-
VERSE CLAIM.—The proceeding provided for by such act is judicial,
and not administrative, and is properly a matter for the judicial
department of the government; and this is so, although there is
or may be no adverse party to the proceeding, in the sense of one
asserting an adverse claim, lien, or encumbrance to or upon the land.
The plan of that act for a new method of registering and trans-
ferring title makes it necessary that the absolute title should first
be established and declared, as the foundation for subsequent pro-
ceedings and transactions.    This is a sufficient cause for placing the
property thus to be affected within the jurisdiction of the court
as a *res,* the ultimate right and title to which could be there adju-
dicated, after reasonable notice to all possible claimants to appear
and assert their claims.    The fact, also, that there is always a possi-
bility that there may be a hostile claim or dispute as to the right
to be established, is in itself sufficient to make the power to be
exercised under the act judicial, and not administrative.

ID.—DUTIES OF REGISTRAR—NOTING LIENS AND ENCUMBRANCES.—The
provisions of that act, imposing upon the county recorder as a
registrar the duty of noting upon the duplicate certificate of title
in his office the existence and general character of instruments creat-
ing liens, encumbrances, trusts, powers, or leases affecting the land
described in the certificate, do not require the exercise by him of
judicial functions, which can be given only to a judicial officer;
and the bestowal on him as an executive officer of such powers does
not violate the provisions of the constitution forbidding the executive
department to exercise the functions of any other department.

ID.—SPECIAL LEGISLATION—SPECIAL CLASS OF REGISTERED LANDS.—
    That act is not special legislation because it makes special pro-
    visions regarding the statute of limitations, the rights of purchasers
    in good faith of land registered under the act, and other matters
    peculiar to the lands which are brought within its provisions. The
    fact that the land thus registered may be conveyed and transferred
    by means different from that required as to other lands, and the
    necessity of a special proceeding as a foundation for the system,
    creates a special class of such registered lands and authorizes special
    provisions of law on the subject, applying only to such registered
    lands, the owners thereof, or persons interested therein, or to the
    procedure whereby the system is to be inaugurated.

ID.—TITLE OF ACT EMBRACES BUT ONE SUBJECT.—The provisions of the
    act relating to the subjects of felonies, county officers, county gov-
    ernment, principal and surety, attorney at law, judgments, liens,
    procedure, and adverse claims, etc., although not specifically enumer-
    ated in the title of the act, do not render the act unconstitutional
    for being in violation of section 24 of article IV of the constitu-
    tion, which requires that ''Every act shall embrace but one subject,
    which subject shall be expressed in its title.'' Such subjects are
    all germane to the general subject there expressed, and, taken
    together, they compose a part of the general scheme and are appro-
    priate to effect the main object of the law.

APPLICATION for a Writ of Mandate to the Superior
Court of the City and County of San Francisco and to Frank
H. Kerrigan, the Judge thereof.

The facts are stated in the opinion of the court.

Walter H. Robinson, and Robert T. Devlin, for Petitioner.

Lent & Humphrey, and Page, McCutchen & Knight, *Amici
Curiæ,* for Respondent.

SHAW, J.—This is an original proceeding in this court
for a writ of mandate. ·

The plaintiff asks a writ to compel the defendant, as
judge of the superior court, to make an order appointing a
time for the hearing of a petition filed in the superior court
to obtain registration of certain lands, as provided in the
act of March 17, 1897, entitled ''An act for the certification
of land titles and the simplification of the transfer of real
estate,'' known as the ''Torrens Law.'' (Stats. 1897, p. 138.)
The defendant refused to make the order, basing his refusal
upon the ground that the act above mentioned is uncon-

stitutional and void. The validity of the act is the sole question presented for our consideration.

The object of the act is well stated in the title. It purports to establish a system for the registration of title to land, whereby the official certificate will always show the state of the title and the person in whom it is vested, and to provide that, after the original registration, transfers of the land may be made in the manner prescribed in detail in the act. As a foundation for the system, it is necessary to have the title established. To that end a proceeding is authorized whereby such title may be settled and declared by a decree of the superior court. The title thus established is to be certified by the county recorder, and the certificate is made conclusive evidence of title in the person therein named as the owner. The principal point urged in opposition to the issuance of the writ is that the proceeding thus provided for is unconstitutional, because,—1. It would deprive persons of property without due process of law; 2. It would deprive persons of the equal protection of the laws; and 3. It commits to the judicial department of the state functions which are not judicial in character, but purely administrative and executive, contrary to section 1 of article III of the state constitution, prohibiting one department of state from exercising functions belonging to another.

It is necessary to give a brief statement of the essential features of the proceeding to establish and register titles. Any person owning land which he desires to bring within the operation of the act must avail himself of this proceeding. He is required to file in the superior court a verified petition, setting forth his name, occupation, residence, and post-office address; whether married or single, and if married, the name and residence of the husband or wife; the description of the land, and a statement of his estate or interest in it; that the land is occupied or unoccupied, as the case may be, and, if occupied, the name and post-office address of each occupant and the interest or estate such occupant has or claims in the land; the liens and encumbrances thereon and easements therein, with the name and address of the holder thereof, if known; whether or not any other person has or claims any estate or interest of any character in the land, and the name and address, if known, of every

such person and the nature of the estate or interest owned or claimed by him; and the names and addresses of all the owners of adjoining lands, so far as the same can be ascertained. The petition must be accompanied by a plat of a survey of the land, made by a county surveyor, or a licensed surveyor, with a verified or certified abstract of title, made by some person or corporation thereunto authorized as specially provided in the act. (Sec. 6.) The court must examine and determine, from the abstract of title, whether or not it shows the title to be in the petitioner as alleged, and, if it so determine, it shall thereupon appoint a day for the hearing of the petition. (Sec. 12.) Notice of the time and place of the hearing must be given by four weeks' publication in some designated newspaper of general circulation. Notice thereof must also be served in the manner prescribed for service of summons in a civil action, either personal or by publication, as the facts may require, upon all the parties shown by the petition, or by the abstract of title, to be interested, and also upon the husband or wife of the petitioner and upon the owners of the adjoining lands. (Sec. 13.) We construe this provision for service of notice to mean that the service to be thus made on these persons must be personal service, except in those cases wherein, under sections 412 and 413 of the Code of Civil Procedure, service may be made by publication, and that service upon such parties by publication must be made upon affidavit and order, as in those sections provided, and for the period and in the manner there required. Upon the hearing, if the court finds in accordance with the petition, it must make and enter a decree that the petitioner is the owner of the land, accurately describing it, attaching thereto a diagram thereof and setting forth the particulars of the liens, encumbrances, and easements, and an appeal may be taken therefrom as in civil actions. (Sec. 15.) The decree, when it becomes final, is made conclusive of the title and estate therein declared and described, against the rights of all persons, known or unknown, whether named in the proceedings or not. (Sec. 17.) A certified copy of the decree is to be filed with the county recorder, who is designated as "registrar" for the purposes of the act, and upon it he is to issue a certificate of title to the person named in the

decree as owner, and enter a duplicate thereof in a book kept in his office for that purpose. (Secs. 22, 23.) The land thereupon becomes "registered land," and the owner named in the certificate thereupon holds it free from every claim except those noted in the certificate. Subsequent transfers of such "registered land" are to be made and entered in the manner prescribed in the act, and certificates thereof are to be issued by the registrar to the transferee, which shall be conclusive evidence of his title as therein stated. Any person who has been, or would be, defrauded by the decree, and who had no actual notice of the proceeding, may maintain an action to establish his right, against the registered owner, at any time within five years after the first registration.

1. It is conceded, as a matter of course, that there would be no want of due process of law, if the proceedings affected only those persons who are named in the petition, and who consequently must be served with notice, either personal or by publication, in the same manner as in the case of a summons in a civil action. The objection in this respect is that the decree, by the terms of the act, will preclude persons who are not named, persons who really own the land or an interest therein, but who, because of the fact that their claims or their existence are unknown to the petitioner, are not named in the petition, and who consequently will not receive any notice except that afforded by the four weeks' publication required by the act, and who may have no actual knowledge of the proceeding or of the decree.

The proceeding is in all important particulars of similar character to that provided by the act of 1906, known as the "McEnerney Act." (Stats. 1906, p. 78.) In that act it was expressly provided that the proceeding to establish title therein authorized should be had against all persons claiming any interest in, or lien on, the land, whether known or unknown, and that, if the required notices were given and served, the decree should be conclusive and binding upon all persons, whether named or not, although, as to those not named and unknown, the act required no notice except by publication. In the case of the *Title and Document Restoration Co.* v. *Kerrigan,* 150 Cal. 289, [88 Pac. 356], that act was attacked as unconstitutional in the same particulars as

those here urged against the Torrens Law, and it was declared to be valid and constitutional. The reasons for holding that act valid are set forth at length in the elaborate opinion of Justice Sloss, rendered in that case. They are fully applicable to the case now under consideration, and we refer to that opinion for a full answer to the objection that the Torrens Law does not provide for due process of law, nor afford to all persons the equal protection of the law.

Similar laws have been enacted in Illinois, Minnesota, and Massachusetts. These laws were attacked in the supreme courts of those states, on similar constitutional grounds, and have been declared valid. These decisions fully support the conclusion that the act in question does not deprive persons of property without due process of law, nor withhold from them the equal protection of law. (*People* v. *Simon,* 176 Ill. 165, [68 Am. St. Rep. 175, 52 N. E. 910] ; *State* y. *Westfall,* 85 Minn. 437, [89 Am. St. Rep. 571, 89 N. W. 175] ; *Tyler* v. *Judges,* 175 Mass. 71, [55 N. E. 812].)

The state has full control over the subject of the mode of transferring and establishing titles to property within its limits. For these purposes the state has power to provide a special proceeding, in the nature of a proceeding *in rem,* to fix the *status* of the land and declare the nature of the titles and interests therein and the person or persons in whom such titles and interests are at the time vested. It may do this whenever it may be considered necessary or likely to promote the general welfare. (*Arndt* v. *Griggs,* 134 U. S. 321, [10 Sup. Ct. 557] ; *People* v. *Simon,* 176 Ill. 165, [68 Am. St. Rep. 175, 52 N. E. 910] ; *Hamilton* v. *Brown,* 161 U. S. 256, [16 Sup. Ct. 585].)

2. The proposition that the proceeding is judicial, and not administrative, that it is properly a matter for the judicial department, was also fully considered and established in *Title etc. Restoration Co.* v. *Kerrigan,* 150 Cal. 289, [88 Pac. 356], and the reasons there given apply here.

The claim on behalf of the defendant in this particular seems to be based on the theory that there is or may be no adverse party to the proceeding; that it may be had where there is in fact no adverse claim, lien, or encumbrance to or upon the land, and hence that it is not adversary in charac-

ter.  That it may not become adversary in this sense is of course conceded.  It would not necessarily follow that the proceeding was not judicial.  It needs no citation of authority to establish the proposition that the power of a court to entertain an action does not depend upon the appearance of the defendant and his active opposition to the claims of the plaintiff.

The contention is further made in this connection, that judicial power can be exercised only to settle existing disputes and controversies, and that, if none exist, the act of merely describing and declaring an undisputed title is necessarily administrative and cannot be performed by the judicial department.  This argument does not fully meet the case.  It may be admitted that the existence of controversies which could not be settled by the interested parties, and the necessity of some other means of determining such controversies, were the primal causes for the institution of courts with power to adjudge between the parties to the strife, and, consequently, that originally the exercise of judicial power implied the existence of an actual present controversy to be determined.  But the refinements of civilized life, and the necessity for the orderly regulation, determination, and protection of human affairs and rights of property, have long required the extension of the judicial power beyond the settlement of controversies which have actually arisen, so as to include the function of providing security against disputes and claims which may arise. Hence, in modern times the power of the courts may be, and often is, exerted to protect property and rights from possible, though at the time unknown, hostile claims and pretensions, or to merely declare a *status,* or right, and thereby to forestall and prevent controversies which, but for the judicial declaration, might arise in the course of future transactions or proceedings.  In the case provided for by the McEnerney Act, the total destruction of all the public records and muniments of title had endangered all real property, had exposed land titles to any sort of false claims, and had made it impossible for any landowner to prove or exhibit his title in the usual manner, if he wished to dispose of or mortgage his land, or defend his title in court.  It therefore became necessary to provide for the establishment of a new record

title. In the case of the Torrens Law the plan for a new method of registering and transferring titles made it necessary that the absolute title should first be established and declared. In each case a *status*, or right, was to be established, declared, and made conclusive, as the foundation for subsequent proceedings and transactions. This was a sufficient cause for placing the property to be thus affected within the jurisdiction of the court as a *res*, the ultimate right and title to which could be there adjudicated, after reasonable notice to all possible claimants to appear and assert their claims. Whether or not this is strictly an exercise of judicial power, as originally instituted, it cannot be denied that it is a power of the class which, from time immemorial, has been committed to and exercised by the courts. At the time the constitution was adopted this class of powers had long been usually exercised by the courts alone. It must be presumed that in providing therein for the division of governmental power into three departments, legislative, executive, and judicial, and declaring that no person charged with the exercise of the powers belonging to one of them should exercise functions appertaining to either of the others, this usual power of the courts was in mind, and that it was intended that the courts should continue to exercise these quasi-judicial powers, as they had previously been accustomed to do. A law which merely creates a new occasion and provides a new procedure for the exercise of this power, cannot be said to transgress this clause of the constitution.

Furthermore, in such matters, there is always a possibility that there may be a hostile claim or dispute as to the right to be established. If it were necessary to find further justification for classing this power as judicial, this circumstance would be sufficient. A hostile claim being possible, there is, in contemplation of law, an adverse claim to be settled, a right to be protected against the possible claimant, for which a judicial decree is the only practicable and effectual remedy.

3. The claim is made, although not argued, that by sections 48, 49, 55, 58, 59, 60, 61, 64, 67, and 68 of the act the registrar is given judicial powers. These sections require the registrar to note upon the duplicate certificate of title

in his office the existence and general character of instruments creating liens, encumbrances, trusts, powers, or leases affecting the land described in the certificate. The point is that the registrar is required to determine the legal effect of these instruments, and that this is a judicial function which can be given only to a judicial officer. There is no force to the objection. Every administrative officer is frequently called upon, in the discharge of his duties, to decide questions of law relating thereto. The recorder is required to determine whether an instrument presented for record is a deed, a mortgage, a lease, a notice of action, or what not, so as to record it in its proper book. The sheriff must often determine, for his own guidance in making a levy, the ownership of property. The clerk must determine the nature and legal effect of papers filed with him, and perform the appropriate duty respecting them. The duties required of the registrar by these sections are of the same nature. His decision in the matter is not conclusive. If he decides wrongfully and refuses to perform the appropriate duty in the premises, he may be compelled to act properly by means of a writ of *mandamus,* the same as any other ministerial officer who mistakes his duty under the law and refuses to perform it. The exercise of such powers by ministerial officers is a necessary function of the executive department, and although it may require similar deliberation to that involved in the exercise of judicial power, the bestowal of such powers upon the executive department does not violate the provisions of the constitution forbidding that department to exercise the functions of any other department. (*People* v. *Simon,* 176 Ill. 165, [68 Am. St. Rep. 175, 52 N. E. 910]; *Owners* v. *People,* 113 Ill. 296; 1 Story on Constitution, 5th ed., sec. 525.)

4. It is claimed that the act is special because it makes special provisions regarding the statute of limitations, the rights of purchasers in good faith of land registered under the act, and other matters peculiar to the lands which are brought within its provisions. We perceive no merit in this contention. The fact that the land thus registered may be conveyed and transferred by means different from that required as to other lands, and the necessity of a special proceeding as a foundation for the system, creates a separate

CLI Cal.—4

class of such registered lands, and authorizes special provisions of law on the subject, applying only to such registered lands, the owners thereof, or persons interested therein, or to the procedure whereby the system is to be inaugurated.

5.   The claim is also made that the act violates the provision of section 24 of article IV of the constitution, that "Every act shall embrace but one subject, which subject shall be expressed in its title."

The title of the act is "An act for the certification of land titles and the simplification of the transfer of real estate." The act makes it a felony to fraudulently procure a false certificate of title under the act, or to fraudulently obtain any false entry thereunder. (Secs. 111, 112.) The county recorder is constituted the registrar under the act, and required to perform the duties of registrar. (Sec. 1.) The official bond of the recorder is made to cover his duties as registrar. (Sec. 2.) The registrar is prohibited from practicing law. (Sec. 4.) The filing of the petition to establish title operates as a *lis pendens.* (Sec. 11.) The decree is made final and conclusive. (Sec. 17.) Liens are not to become effective on registered land until their entry on the duplicate certificate in the recorder's office. (Secs. 91, 92, 93, 94 and 95.) Claims to registered lands cannot be obtained by adverse possession. (Sec. 35.) Four weeks' constructive notice is all that is required with respect to persons who are unknown. (Sec. 12.) These provisions relate to the subjects of felonies, county officers, county government, principal and surety, attorneys at law, judgments, liens, procedure, and adverse claims, respectively, and it is claimed that the act is void because none of them are mentioned in the title. And it is intimated that if they were mentioned, the law would be contrary to the mandate of the constitution that the act shall embrace but one subject. If the first proposition is well taken, it is certain that the second is also established. But the mere statement of the objection is almost sufficient to refute it. While it is true that none of the subjects thus designated is expressed in the title, they are all germane to the general subject there expressed, and, taken together, they compose a part of the general scheme, and are appropriate to effect the main object of the law. Further examination would have disclosed

a large number of such "subjects" in the body of the act which are not mentioned in the title. The same criticism might be made of many acts on a general subject which have always been considered as valid. The act establishing the scheme is the appropriate place for provisions necessary to make it effective and symmetrical. If it were necessary to mention every subdivision of the general subject of an act in the title to the extent here claimed, our statutes would present a somewhat ludicrous appearance. The statement of the subject in the title would generally occupy almost as much space as the act itself. Furthermore, if subjects, as intended by the constitution, must be so minutely subdivided, it would be impracticable to enact any comprehensive law on any general subject, by reason of the necessity of dividing it into so many separate acts. The provision must receive, and it has received, a more liberal construction. The word "subject" is given a broader meaning. (*People* v. *Mullender,* 132 Cal. 217, [64 Pac. 299].) All the provisions objected to as constituting a different subject are reasonably necessary as means for attaining the object of the act indicated by the subject which is expressed, and hence they are considered as included in the title, as subdivisions of the general subject there stated. (*People* v. *Parks,* 58 Cal. 636; *Ex parte Liddell,* 93 Cal. 633, [29 Pac. 251]; *Hellman* v. *Shoulters,* 114 Cal. 136, [44 Pac. 915, 45 Pac. 1057]; *People* v. *Linda Vista Irr. Dist.,* 128 Cal. 477, [61 Pac. 86]; *Deyoe* v. *Superior Court,* 140 Cal. 476, 488, [98 Am. St. Rep. 73, 74 Pac. 28].) We think the title to the act sufficiently expresses the subject to which it relates, and that it embraces but one general subject. We find no sufficient ground for holding the law unconstitutional.

Let the writ of mandate issue as prayed for.

Sloss, J., Henshaw, J., Angellotti, J., McFarland, J., and Lorigan, J., concurred.

Rehearing denied.