## VALIDITY OF THE ACT LICENSING TRAFFIC IN INTOXICATING LIQUORS.

Common Pleas Court of Hamilton County.

### Ex Parte William C. Scott.

Decided, December 19, 1913.

*Constitutional Law—Section 9 of Article XV of the State Constitution Not in Conflict with the Fourteenth Amendment of the Federal Constitution—Policy of Ohio Legislation with Reference to Traffic in Intoxicating Liquors.*

1. The effect of the state constitutional amendment of September 3, 1912, is not to relieve the business of trafficking in intoxicating liquors from any of the burdens theretofore placed upon it, nor does it place this traffic upon the same footing as other callings and occupations, but on the contrary further restrictions and burdens were placed upon the business with a limitation on the number and class of persons who may be engaged therein.
2. Neither is said amendment, nor the act of the Legislature passed in pursuance thereof, in derogation of the Fourteenth Amendment of the Federal Constitution.

*Max Levy,* for petitioner.

*P. J. Dempsey* and *John A. Deasy,* Assistants to the Attorney-General, and *Bernard C. Fox,* Assistant City Solicitor, contra.

Geoghegan; J.

The petitioner in his application for a writ of habeas corpus sets forth that he was unlawfully imprisoned by William Copelan, chief of police of the city of Cincinnati, on the pretended charge that he, the said William C. Scott, sold intoxicating liquors without having been licensed as provided in Section 1261-63 of the General Code of Ohio, and that the said statutes relating to the licensing of dealers in intoxicating liquors are unconstitutional, the same being in violation of Section 1 of Article I of the Bill of Rights of the Constitution of Ohio, and of the Fourteenth Amendment of the Constitution of the United States.

The answer of the chief of police is that he holds the body of the complainant by virtue of a warrant issued under Section 1261-63 of the General Code of Ohio.

The issue presented on the argument of counsel and from the application and the answer thereto is that the act of the General Assembly, known as "An act to provide for license to traffic in intoxicating liquors and to further regulate the traffic therein; to establish a state liquor licensing board and county licensing boards; to define their powers and duties and to amend Sections 6065 and 6071, General Code, of Ohio," is unconstitutional and void as being in violation of Section 1 and Article I of the Bill of Rights of the state of Ohio and of Section 1 of the Fourteenth Amendment of the Federal Constitution.

As to the proposition that the law in question is in violation of Section 1 of Article I of the Bill of Rights, it is sufficient to say that prior to the constitutional amendment of September 3, 1912, which is the amendment under which the law is drawn, no license to traffic in intoxicating liquors could be granted by the Legislature, but the Legislature had the power under the Constitution of 1851 to regulate the sale of intoxicating liquors in the state. Therefore, as the amendment of September 3, 1912, expressly retained in force existing local option laws and other regulatory measures that had been passed by the Legislature, it is clear that the effect of the constitutional amendment of September 3, 1912, was not to relieve the business of trafficking in intoxicating liquors from any burdens that had theretofore been put upon it. Nor could it have been the intention to put it on a footing with other callings and occupations, for the reason that if that were so, then these local option measures and regulatory measures cuold not be justified in the proper exercise of the police power of the state. But the very fact that they have been retained, when their only justification is the exercise of the proper police power of the state, indicates that the people of this state, by the amendment of September 3. 1912, known as Section 9 of Article XV of the Ohio Constitution, intended simply to put more restrictions and burdens upon the business and to restrict the number and class of persons who

might engage· in it. There is no natural or common right in every citizen to engage in the liquor traffic, unless it is granted by Sections 1 and 2 of Article I of the Ohio Constitution, and yet nevertheless these provisions have been part of the Constitution since the admission of Ohio to the Union, and notwithstanding this under the Constitution of 1851 the people of Ohio prohibited the granting of a license to the business and authorized the Legislature to regulate the business, which if it did not mean to prohibit altogether, meant at least to restrain and restrict its operation. And further, in September, 1912, the people amended Section 9 of Article XV so as to limit the number of persons engaged in liquor traffic to one in every five hundred, and to grant those persons licenses from time to time. Therefore it must not be assumed that the people in adopting the latter amendment could have contemplated granting a right which, if it existed at all, must have been recognized by the Constitution in Sections 1 and 2 of Article I since the formation of the state. The natural conclusion is that the people, therefore, have only intended that further restrictions should be put upon the business of trafficking in intoxicating liquors, and that the adoption of a license system is a limitation and restraint upon the traffic.

The next question arises as to whether or not Section 9 of Article XV of the act of the Legislature referred to above and passed by authority of said section is in conflict with Section 1 of Article XIV of the Federal Constitution, which among other things provides:

"Nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law."

It would seem that the propositions, that in so far as the states are engaged in the legitimate exercise of the police power, they are not hampered by any provision of the Federal Constitution, and that the right to regulate and even prohibit the traffic in intoxicating liquors is within the police power of the state, are too well settled to need citation of authority;

nevertheless, I have been almost overwhelmed in ·this case ·by an avalanche of authorities, and I have carefully and conscientiously reviewed them because of the importance of the question herein involved to a great number of persons, who,· if this act is valid, will under its operation be deprived of their former means of livelihood and will be compelled to seek new businesses and new occupations.

Whatever may be said as to the fundamental merit of the proposition that, in the regulation and prohibition of the liquor traffic the states are within their proper police power, it has become so throughly intrenched as a part of our system of government that one must follow the rule whether he agrees with it in conscience or not.   It would be useless for me to cite a great number of authorities for the proposition that a citizen of a state can. not claim the privilege under the Fourteenth Amendment, of entering into or remaining in a business or calling which might affect injuriously the .health, good order, good morals, peace or safety of society.   It ·is sufficient to note ·the following: *Slaughter-House Cases,* 16 Wallace, 36; *Bartemeyer* v. *Iowa,* 18 Wallace, 129; *Cronin* v. *Denver,* 192 U. S., 109; *Ohio, ex rel,* v. *Dollison,* 194 U. S., 445; *Beer Co.* v. *Mass.,* 97 U. S., 25; *Fertilizing Co.* v. *Hyde Park,* 97 U. S., 652; *Mugler* v. *Kansas,* 123 U. S., 623; and numerous cases.

In *Ohio, ex rel,* v. *Dollison,* 194 U. S., 445, which was a case wherein the constitutionality of the Ohio law known as the "Beal law" was in question, Justice McKenna says:

"Plaintiff in error further urges that to make an act a crime in certain territory and permit it outside of such territory is to deny to the citizens of the state the equal operation of the criminal laws, and this he charges against and makes a ground of objection to the Ohio statute.   This objection goes to the power of the state to pass a local option law, which, we think, is not an open question.   The power of the state over the liquor traffic we have had occasion very recently to decide.   We said, affirming prior cases, the sale of liquor by retail may be absolutely ·prohibited by a state.   *Cronin* v. *Adams,* 192 U. S., 108.   That being so, the power to prohibit it conditionally was asserted, and the local option law of the state of Texas was sustained.   *Rippey* v. *Texas,* 193 U. S., 504."

In Beer Co. v. Mass., 97 U. S., 25, it is held in the third paragraph of the syllabus:

"All rights are held subject to the police power of a state; and, if the public safety or the public morals require the discontinuance of any manufacture or traffic, the Legislature may provide for its discontinuance, notwithstanding individuals or corporations may thereby suffer inconvenience."

The case of Trageser v. Gray, 73 Md., 250, is in many of its aspects analogous to the case at bar. In that case a board of three commissioners was established with power to grant licenses to sell liquor at retail. Applicants were required to file certain affidavits with the board, and the act further provided that the license should be granted only to citizens of the United States of temperate habits and good morals. The plaintiff, a native of Prussia, applied for a license, which was refused him. He applied for a writ of mandamus, and the sole qeestion presented was whether or not the statute was a valid and constitutional enactment under the provisions of Section 1 of Article XIV of the Federal Constitution, and in that case the Court of Appeals of Maryland held that it followed the principles laid down in the Slaughter-House Cases and the long line of cases which held that the proper exercise of the police power on the part of a state does not invade the rights, privileges and immunities granted by the Fourteenth Amendment to the Federal Constitution.

So, it seems clear that if the act in question is a proper exercise of the police power, it is not in violation of the Fourteenth Amendment. However, counsel for the petitioner makes the point that the act is discriminatory in its nature inasmuch as it provides that only one person to every five hundred shall be granted a license, and that therefore in denying to persons the right to obtain a license when a sufficient number of licenses have been granted in any political subdivision as equals the ratio of one to five hundred, its tendency is to create a monopoly in favor of some, and therefore deny to others the equal protection of the laws. However, this precise proposition has been passed upon, by no less great authority than the Supreme

Court of Massachusetts, in the case of *Decie* v. *Brown*, 167 Mass., 290.    The Massachusetts act provided that the number of places to be granted licenses should not exceed one to each one thousand of population, and the complaint was made that the board authorized to grant licenses would have granted the license to complainant had it not been for that restriction, and it was contended in his behalf that the law not only conflicted with Article VI of the Declaration of Rights of the Constitution of the commonwealth, but also with Article XIV, Section 1 of the amendment to the Constitution of the United States, precisely the same contention as is made here.    In passing upon that contention the court says, at page 291:

"It is too late to question the validity of such statutes.    This one does not differ in substance from any statute which forbids the carrying on of a trade or business, or the exercise of a profession, by other than licensed persons.    Such statutes are upheld because the resulting exclusion of unlicensed persons is not designed to confer on those who are licensed an exclusive benefit, privilege, or right, and where that result does follow it is merely the collateral and incidental effect of provisions enacted solely with a view to secure the welfare of the community. See *Hewitt* v. *Charier*, 16 Pick., 353; *Commonwealth* v. *Blackington*, 24 Pick., 352; *Commonwealth* v. *Kimbell*, 24 Pick., 359.

"The limitation of the number of licensed places within the territory of a town or city is a reasonable exercise of the police power, and therefore is not in conflict with the Constitution of the Commonwealth or the Fourteenth Amendment to the Constitution of the United States."

In the Slaughter-House cases, wherein the doctrine here relied upon was first proposed, the Supreme Court of the United States held that a statute of Louisiana which granted a practical monopoly in the slaughter-house and butcher business to certain persons was not in conflict with the Fourteenth Amendment, but was a proper exercise of the police power, which in its proper exercise is always and must necessarily be discriminatory.

And in *Trageser* v. *Gray*, *supra*, the court in discussing the question of discrimination uses this language, at page 259:

"The statute now before us oppresses no one and was intended to oppress no one. It does not take from any man a solitary right, privilege or immunity. It subjects no one to penalties for its violation which are not imposed equally on all offenders. It does not, it is true, make an equal partition of the privilege of liquor selling among all classes of persons. But there is no warrant for supposing that legislative control over this traffic must conform to any such standard. It is not crippled by any such restraint. It overrides all private interests and embraces all means which are necessary and proper to protect the public from evils connected with the subject. Assuredly the Supreme Court did not consider this control as limited by the necessity of making an equal distribution of favors, when it said in speaking of the trade in liquor and its consequences: 'The police power which is exclusively in the states is alone competent to the correction of these great evils, and all measures of restraint or prohibition necessary to effect the purpose are within the scope of that authority.' *Mugler* v. *Kansas,* 123 U. S., 659. Nor is any such limitation consistent with the decisions in *Stone* v. *Mississippi,* 101 U. S., 814; *Beer Co.* v. *Massachusetts,* 97 U. S., 25; and *Fertilizing Co.* v. *Hyde Park,* 97 U. S., 659. In one of these cases a franchise which had been purchased from the state was taken away from the purchaser without compensation to him, because it was considered by the Legislature to be hurtful to the public morals. In the other two cases, by the exertion of the police power, property of vast amount was rendered valueless, although it had been acquired under the express sanction of the Legislature. It is needless to refer again to the Slaughter-House cases, where there was a severe discrimination in favor of a single corporation and against every one else, solely because the protection of the public health was involved."

It would seem unnecessary to cite further authority with reference to the right of the state either by direct act or by the conference of powers upon commissioners or other licensing bodies, *to limit the number of persons to whom licenses should be given,* yet in passing it might be well to refer to a few of these that sustain that proposition, and this I shall do by mere citation. *Freund on Police Power,* Section 211; *People* v. *Hoy et al,* 98 N. Y., 145; *In re Jugenheimer,* 81 Neb., 836.

In the foregoing cases it was expressly held that in the exercise of the police power the state had the right to limit the

number of saloons in any given locality as a proper exercise of the police power of the state.

Before passing this subject I wish to refer to two cases cited by counsel for the petitioner as being contrary to this proposition. In the case of *Leon Levy, ex parte,* 43 Arkansas, 42, at page 52, the court said:

"There are some trades and occupations confessedly dangerous, either as to health, or safety, or morals. Government has the inherent power to regulate or prohibit them. It is not presumed that constitutions meant to prohibit this salutary exercise of power. The retail of liquors is one of them. As lawful as any other, when permitted, and as fully entitled to protection, it is nevertheless in questions of giving or withholding permission, considered as dangerous.

"If the Legislature, recognizing this danger, had prohibited the retail of liquors generally, making it unlawful to any one to keep a dram shop, and had at the same time recognized a certain public necessity or convenience to be met by the existence of a limited number of places for such houses; and had provided that the assent of the people having been first obtained, the county court might grant such number of licenses as it might deem best; it would be just such a statute as the Jefferson Court construed this to be. Although private profits might attend the privilege, they would not be in the contemplation of the law, nor within its purposes. The intention of such a law would be the relaxation of a general prohibition for the benefit of the public in certain localities upon the expression of the desire of a majority of the inhabitants of those localities, and to do so only to the extent which the proper local tribunal might deem best. Although such a selection might result in an exclusive power to sell in the hands of those selected, we think it could not fairly be considered a monopoly in the sense of the constitutional prohibition, but rather a police regulation for the public good. This view of a definition of a monopoly is sustained by the court in the Slaughter-House Cases, 16 Wallace."

While it is true that under the circumstances of that case the court was compelled to hold that every one who was otherwise qualified for the license should receive one, nevertheless this was solely because the Legislature had not seen fit to limit the number of dram shops, as the court calls them, and that

therefore under the provision of the Arkansas Constitution the county court had no right to discriminate between persons equally qualified.

In *Meyer* v. *Decatur*, 125 Ill. App., 556, at page 560, the court distinguishes the ordinance therein involved which reserved an arbitrary discretion as to the persons who should get a license and those cases wherein the political subdivisions had by ordinances or laws limited the number of licenses, and the court says:

"It is clearly distinguishable from the ordinance enacted by the village board of Hyde Park reserving to the board a discretion to determine the number of dram shops the public good required. *People* v. *Creiger, supra* (138 Ill., 401). The further provision in the same section, reserving to the city council the right to limit the number of licenses to be issued, is merely declaratory of a right vested in the city council by the Legislature. Such right can, however, only be exercised through an ordinance fixing the number of licenses to be issued, or providing some uniform method by which the number shall be determined."

I think from the citations above it will be clearly seen that the objections made by the petitioner to the constitutionality of this law are against the great weight of authority. Whatever may be said as to the propriety of this kind of legislation, it has become so strongly intrenched as a question of policy that one court has said there is an inherent right in the people to regulate the retail liquor traffic, which right existed prior to the time that constitutions and laws were written.

Some statement was made in the argument that the operation of this law had the result of depriving those who were not granted licenses of their property without due process of law. This is sufficiently answered by referring to the case of *Adler* v. *Whitbeck*, 44 O. S., 539, wherein our own Supreme Court says at page 574:

"It is averred that, from a long time prior to the enactment of this law, the plaintiffs have been engaged in the traffic of intoxicating liquors, and have had a large amount of property invested in the business; and it is claimed that the law can not

be made applicable to them without impairing vested rights. The claim is not tenable. It would subvert the power to provide against the evils of the traffic, and place it superior to any regulation whatever. The provision of Section 9, Article XV (Section 18 of the schedule) of the Constitution has stood, since its adoption, as a perpetual admonition to all persons engaging in the traffic, that, in doing so, they place their property, invested in the business, subject to the power of the General' Assembly to provide against evils resulting from the traffic. The same argument was made in *Miller* v. *State, supra,* against the act of 1854 prohibiting among other things, the sale of liquor to be drunk on the premises where sold; but it met with no favor in the court. The law was held valid. See opinion of Thurman, J., in the case 3 Ohio St., 484-7.

"No prescriptive right can be claimed by persons engaged in the whisky traffic against the exercise of its functions by the Legislature of the state. It was said by Taney, C. J., in the License Cases, 5 How. (U. S.), 577: 'If any state deems the retail and internal traffic in ardent spirits injurious to its citizens, and calculated to produce idlenesss, vice, or debauchery, I see nothing in the Constitution of the United States to prevent it from regulating and restraining the traffic, or from prohibiting it altogether, if it thinks proper."

I have studied carefully the propositions herein involved. I have made an examination of the great number of authorities presented by counsel on both sides. While there is a great deal to be said in behalf of the petitioner herein and those similarly situated from the standpoint of natural justice, nevertheless, it seems that the policy of the government as laid down in the vast number of cases, some of which I have cited, is to hold that the traffic in intoxicating liquors is a business in which a man enters at his peril and that he is to be subjected to such restrictions and changes as the people in the exercise of their judgment deem necessary. It is only natural that in the carrying out of this policy, more or less arbitrary power must be left to boards or individuals and it seems that the authorities countenance the leaving of a large discretion to the boards and commissions which are designated to carry these laws into effect.

That there is no objection to the exercise of some discretion on the part of administrative officers is clearly in the doctrine

laid down in *Robinson* v. *Kerrigan,* 151 Cal., 40, at page 49, wherein the court passes upon the exercise of discretionary and somewhat judicial powers of administrative officers and holds that the exercise of such powers is a necessary function in any executive department in so far as it does not encroach upon the exercise of powers that are purely judicial in their nature.

I therefore am compelled to hold, in view of these authorities, that the amendment of September 3, 1912, now known as Section 9 of Article XV of the Ohio Constitution, as well as the act of the Legislature passed in pursuance of said delegation of power, are not in conflict with Section 1 of Article XIV of the amendment to the Federal Constitution.

Considerable was said during the argument of this cause concerning the wisdom of this legislation as well as an alleged defective and unjust conferring of arbitrary power upon the licensing board. It is not my part to question the wisdom of this legislation, nor to correct by a judicial decision any alleged mistakes that the Legislature may have made in devising the operation of this law. The petitioner herein presented himself to the court squarely upon his constitutional rights, and as I have pointed out before, these rights have not been invaded. If the state has a right to pass a law regulating the traffic in intoxicating liquors by limiting the number of persons who engage in that traffic to a certain proportion of the population, and to further require them to apply for a license, and to provide a penalty for the engaging in the traffic without first having been licensed, then this petitioner has no standing in court on his writ of habeas corpus, but must stand trial on the charge that is preferred against him. That the state has such a right is clear and conclusive in the light of all the authorities heretofore cited and commented upon.

The application for the writ of habeas corpus will therefore be denied.