[L. A. No. 6887. In Bank.—June 10, 1922.]

FRANCES INVESTMENT COMPANY (a Corporation), Petitioner, v. SUPERIOR COURT OF IMPERIAL COUNTY etc., et al., Respondents.

[1] TORRENS LAND ACT—PURPOSE OF—DETERMINATION OF COLLATERAL ISSUES.—The obvious purpose of the Torrens Land Act is to establish a merchantable record title to land in the true owner and to enable the registration of every tract in such a way that all interests therein may be disclosed by the certificate, and wide powers are expressly granted under the act to determine collateral issues as preliminary to establishing a title subject to registration.

[2] ID.—JURISDICTION—FEE-SIMPLE TITLE.—While a fee-simple title must be established before a certificate of registration may be decreed in a proceeding under the Torrens Land Act, the existence of such a title is not required in the applicant at the time of filing his petition, but it is sufficient if the facts pleaded are such that

Validity and construction of Torrens acts, notes, 12 Ann. Cas. 834; Ann. Cas. 1913C, 871; Ann. Cas. 1918E, 184; L. R. A. 1916D, 14.

when determined by the decree they establish title in some one or another of the claimants.

[3] ID.—ADEQUACY OF PLEADINGS—POWER OF COURT.—Under the expressed and implied powers of the court in a proceeding under the Torrens Land Act, there is authority for requiring pleadings adequate to cover any issue properly to be tried.

[4] ID.—TRUST DEED—PROCUREMENT BY FRAUD—ADJUDICATION OF ISSUE—JURISDICTION.—In a proceeding for the registration of a title under the Torrens Land Law, the court has jurisdiction to try the issue raised by the applicant that a trust deed against the land was procured by fraud.

[5] ID.—TITLE OF ACT—KIND AND NATURE OF TITLES INCLUDED.—The title of the Torrens Land Act is comprehensive enough to allow the certification of whatever kind or nature of land title the text of the act gives jurisdiction to ascertain and establish.

[6] ID.—NATURE OF PROCEEDING—EQUITY.—While a proceeding under the Torrens land law is a special proceeding, it is a proceeding in the superior court strikingly similar to that provided by general law for the ordinary civil action, and the principle through which courts of equity once obtaining jurisdiction of a given subject matter will administer complete relief in the premises is applicable thereto.

REHEARING of application for a Writ of Prohibition to restrain a proceeding under the Torrens Land Act after denial of application by the District Court of Appeal. Writ denied.

The facts are stated in the opinion of the court.

Wm. Story, Jr., Joseph L. Lewinsohn, William A. Barnhill and Lissner, Lewinsohn & Barnhill for Petitioner.

Walter Kibbey for Respondents.

Joe Crail and Julius V. Patrosso, *Amici Curiae.*

SLOANE, J.—This matter comes to us on petition for rehearing upon an order of the district court of appeal, second appellate district, denying an original application of petitioner for a writ of prohibition to restrain the superior court of Imperial County from trying the validity of a trust deed in a Torrens land proceeding.

In the application for registration of title in the land proceeding, Walter P. Downey and Nellie E. Downey

claimed title in fee to the premises, subject only to a trust deed which they had given to third parties to secure their promissory note. They are seeking in the land title proceeding to rescind and set aside this trust deed on the ground that it was procured by fraud, and to have title in fee certified in themselves freed from this adverse evidence of title.

The sole question presented on this hearing is that of jurisdiction of the superior court under the Torrens Act to adjudicate as well as to ascertain and certify real estate titles.

Petitioner concedes authority in the court under this procedure to quiet title to real estate by removing clouds therefrom and determining adverse claims, but disputes jurisdiction to establish title by judicial decree in one who has no title at the time of filing his petition for registration but only an actionable right to such title.

The opinion of the court of appeal in this case upholding such jurisdiction is without precedent in this state and apparently goes further than the decisions in other states in construing similar statutes, but we find its argument convincing.

[1] The obvious purpose of the act is to establish a merchantable record title to land in the true owner and to enable the registration of every tract in such a way that all interests therein may be disclosed by the certificate.

The title of the act is, "An act for the certification of land titles and the simplification of the transfer of real estate." To attain this end in all cases it must frequently be necessary to determine adverse claims, either in such proceeding or by resorting to an independent action. Wide powers are expressly granted under the act to determine collateral issues as preliminary to establishing a title subject to registration, and it is insisted that the powers conferred are sufficiently in the nature of a proceeding in equity to empower the court entering upon the investigation to grant complete relief.

It is provided that "all land may be brought under the operation of this act, by the owner or owners of *any* estate or interest therein, whether legal or equitable."

Petitioner insists that the claimants in this case had no estate whatever; that their estate became vested in the

grantee under the trust deed, and that, conceding the transfer to have been obtained by fraud, all the interest the claimants have is an equitable remedy to avoid the transfer.

Waiving the doctrine affirmed in *Warren Co.* v. *All Persons,* 153 Cal. 771 [96 Pac. 807], that under a trust deed the legal title to land is conveyed solely for purposes of security and that a legal title is left in the trustor as against all persons excepting the trustees and those claiming under them, may it not be true that even the right to a decree revesting title in the trustor, or for the enforcement of any other right which would vest a legal title, may be maintained in this proceeding?

Suppose, for instance, the holder of a record title obtained by fraud should be the petitioner for registration of title in his name under the Torrens Act, surely the person entitled to the rescission of such fraudulent conveyance could come in and assert his rights and have them adjudicated in such a way as to restore his title and have it certified.

So far as jurisdiction is involved, no greater power would be invoked if the owner of the equitable right to title by rescission was the moving party in the petition for certification under the act.

The act especially provides for the registration of titles by prescription. Would not the same trial of independent claims of ownership be involved where in such a proceeding the claimant by adverse possession is opposed by one holding an apparent title of record?

The act provides for notice to all parties in interest and that "all persons who claim an interest may appear and object to the granting of the application"; that "the court shall set the petition down for hearing upon notice to all persons who have appeared as is required in other civil actions and shall proceed to determine the title to all land described in the petition and of all persons who may have an interest therein . . . and shall make, give and enter a decree confirming the title of the person found to be the owner, whether it be the applicant or any other person who may . . . ask to have his title registered, and that upon the trial of any issue of fact raised by the verified pleading of any person claiming by such pleading to have an interest in . . . the land or appurtenances, such issue shall, upon

demand of any party appearing, be submitted to a jury in the same manner and to the same extent as such issue can, under general law and the constitution of the state, be submitted to a jury trial, . . . and . . . the verdict shall have the same force and effect as is provided by general law upon the submission of like issues to a jury." (Stats. 1915, p. 1932.)

The act contains many other provisions for determining and certifying various estates, liens, and encumbrances incident to land titles, "in such manner as to show their relative priority, all particular estates, mortgages, easements, liens, attachments and other encumbrances," and that "a decree of the court ordering registration shall be in the nature of a decree *in rem,* shall forever quiet the title to the land therein ordered registered and shall be final and conclusive as against the rights of all persons known and unknown, *to assert any estate, interest, claim, lien or demand of any kind or nature whatsoever against the land so registered."*

It is also declared that "this act shall be construed liberally so far as may be necessary for the purpose of effecting its general intent."

Petitioner calls attention to the requirements that "no mortgage, lien, charge or lesser estate than a fee simple shall be registered unless the fee simple to the same land is first registered."

[2] It is true that a fee-simple title must be established before a certificate of registration may be decreed, but it will be remembered that the existence of a fee-simple title is not required in the applicant at the time of filing his petition, but that the owners of any estate or interest, whether legal or equitable, may petition, and that it is sufficient to institute proceedings "if it appears to the court from its examination of an abstract or from the report of the examiner, or from the petition, where no abstract is required, that the title to the land described in the application appears to be substantially *as alleged."* In other words, it is sufficient to give the court jurisdiction if the facts pleaded are such that when determined by the decree of the court they establish title in fee in some one or another of the claimants.

Petitioner in its final reply brief cites *Matter of Application of Wasson,* 54 Cal. App. 269 [201 Pac. 793], as the latest pronouncement of the courts of California construing this law.  The question presented here was not involved in that case, and it contains nothing repugnant to the jurisdiction here invoked.  The opinion holds that ''the applicant for initial registration of title, as a title in fee, must produce proof that he is possessed of such title, either by production of a regular chain of conveyance from the general government or by proof of the creation of a title by adverse possession, and evidence establishing title, good as against the world, is essential to warrant a decree awarding such registration.''

This does not negative the proposition that the decree in the Torrens proceeding itself may determine such title under an inchoate right thereto as preliminary to granting registration.

[3] We are not seriously impressed with petitioner's objection that fraud is not adequately pleaded.  We have no doubt that under the expressed and implied powers of the court in such proceeding there is authority for requiring pleadings adequate to cover any issue properly to be tried.

[4] We agree with the district court of appeal that the superior court of Imperial County is not without jurisdiction to try the issue presented under the Torrens Land Act, and adopt and quote from the opinion of Mr. Justice Works of that court to supplement the views already herein stated, as follows:

[5] ''It is pointed out to us that the title of the law, contemplating, as it does, a 'certification of land titles,' is not broad enough to allow an inclusion in the measure of a grant of such jurisdiction as the respondents seek to exercise, but the suggestion does not impress us as being of great weight.  The purpose of the act is to provide a machinery through which *some* title may be certified, and a part of that machinery consists in the determination by a court *what* title is to be certified.  Said Mr. Justice Shaw in *Robinson* v. *Kerrigan,* 151 Cal. 40 [121 Am. St. Rep. 90, 12 Ann. Cas. 829, 90 Pac. 129], in which case the constitutionality of the original Torrens law was settled: 'The object of the act is well stated in the title.  It purports to establish a system for the registration of title to land,

whereby the official certificate will always show the state of the title and the person in whom it is vested, and to provide that, after the original registration, transfers of the land may be made in the manner prescribed in detail in the act.  As a foundation for the system, it is necessary to have the title established.  To that end a proceeding is authorized whereby such title may be settled and declared by a decree of the superior court.'  It appears, then, that in passing upon the question of jurisdiction presented by the controversy before us emphasis is not to be placed upon the word *certification* in the title of the law.  The ascertainment of title, in a given proceeding, is a preliminary step to certification and the question now is, what kind or nature of *land titles* had the people in mind in framing the title to the law they adopted?  Had they in contemplation merely the record title or did they intend the actual right, to be determined from a consideration of all existing evidence on the subject and from which consideration there might spring a decree establishing actual title, or ownership?  These questions are to be answered upon a construction of the body of the law.  We are convinced that the title of the act is comprehensive enough to allow the *certification* of whatever kind or nature of *land title* the text of the act gives jurisdiction to ascertain and establish.

"The nature and extent of the jurisdiction conferred by the Torrens law, with especial reference to the question whether the exercise of that jurisdiction permits an inquiry into such matters as the respondents threaten to take cognizance of, must be ascertained by viewing from several standpoints the parts of the law which we have above marshaled.  Let us first point out the various issues and controversies which may be presented for settlement in a Torrens proceeding under express provision of the law, for, if they may cover a wide range and lead to the consideration of questions of a varied and complex character, that fact will be in some degree persuasive of the construction in favor of respondents of the general language of the law under which the right to exercise the questioned jurisdiction is insisted upon.  The act unquestionably confers the power to determine whether land sought to be brought under its operation is community property; to settle boundaries the location of which is disputed between the applicant and

189 Cal.—8

adjoining proprietors; to locate the lines of private ways, as well as those of streets and public ways generally; to ascertain, between the applicant and the state, the lines of boundaries where their location is affected by the presence of navigable streams or by the flow of the tides in arms of the sea; and to determine whether a title has arisen by adverse possession. It is not necessary to draw particular attention to the range which litigation may take upon these matters. Suffice it to say that the questions of fact and law presented by some of them often lead to the consideration of as complex and different problems and as to as lengthy trials as are known to the administration of justice.

"In addition to these matters, pointed to directly by the provisions of the law, its text is burdened with words, phrases and clauses showing an intent to confer jurisdiction of the most exhaustive and extensive character. The owner of any estate or interest in land, whether legal or *equitable*, may avail himself of the provisions of the act. The petition must show what interest in the land the applicant has or *claims*, what interest each occupant and any other person has or *claims* in law or *equity*, in possession, remainder, reversion or expectancy, and it must show all liens and encumbrances, whether recorded or not. An examiner of titles may be appointed by the court, but he is evidently intended to serve as a general referee if occasion demands, for he must be an attorney who has been under admission for five years and he is to examine into the title as well as to investigate all facts pertaining to the title which shall be brought to his notice. He is to file a written report together with his opinion as to the title. The court is not to be bound by the report but may require other or further proof. The 'notice' provided for is similar to a summons, the method of service, whether personal or by publication, is much the same as in the case of a summons and the time for appearance after service is the same. Verified pleadings are required from all parties. The notice must state that the applicant has filed a petition praying for a decree that he is the *owner* in fee of the land. All persons who *claim* an interest may appear and object to the application or may assent in writing to registration. A Torrens proceeding is undoubtedly a special proceeding under the technical distinction provided by our law (*County of Yuba* v. *North*

*American C. G. M. Co.*, 12 Cal. App. 223 [107 Pac. 138];
*In re Scott*, 182 Cal. 83 [187 Pac. 9]); but it is worthy of
note, especially as the law was framed and adopted under
the initiative, where correct technical distinctions may not
always be in mind, that the court must give notice of hear-
ing as is required in *other* civil actions. Any issue of fact
raised by any person *claiming* to have an interest in the
land is, upon demand, to be tried by a jury. The decree
shall state whether the *owner* of the land directed to be
registered is married or unmarried, whether the *owner* is
under disability, shall set forth the estate of the *owner* in
the land and shall show the liens and charges against the
land or the *owner's* estate therein. The registrar is to issue
a certificate of title to each person declared by the decree to
be the *owner* of any parcel of land in severalty and the
certificate must show that he is the *owner* of an estate in the
land. In this recitation of significant terms used in the
law, so striking as to require no comment further than that
made at the head of this paragraph, we have omitted all
reference to certain portions of section 14 and all of section
16 of this act, as they will receive attention below.

[6] "In some of the other states land courts, as they
are termed, are created for the purpose of exercising the
jurisdiction incident to the operation of the Torrens sys-
tem. Under the California act, however, the jurisdiction is
conferred upon the superior court, our ordinary trial tri-
bunal. We have already pointed out that the course out-
lined for a Torrens proceeding is strikingly similar to that
provided by general law for the ordinary civil action, from
the filing of complaint to the rendition of judgment. Find-
ing present the usual machinery for the conduct of a civil
action, modified only in so far as the peculiar nature of a
Torrens proceeding appears to require, noting that juris-
diction under the act is to be exercised by the superior
court, it would not be unnatural to discover that the people
intended that a Torrens decree should cut deep and should
cover a wide field. It might reasonably be expected that
such a law would provide for the settlement of all matters
affecting land ownership instead of limiting jurisdiction
to the ascertainment and certification only of record title.
It may or may not be proper to consider jurisdiction under
a Torrens law as jurisdiction in equity, but there is cer-

tainly great reason for the application under such law of the principal through which courts of equity, once obtaining jurisdiction of a given subject matter, will administer complete relief in the premises. That principle has been held to apply to a Torrens proceeding (*Lewis* v. *Chamberlain,* 69 Or. 476 [139 Pac. 571]), and there is internal evidence in our law that the people had the same idea in mind in adopting it. We refer to the provisions of section 17, under which a registration may occur in actions to quiet title or for partition and in probate proceedings. Having in specific terms provided that a Torrens proceeding may be merged into or engrafted upon an action to quiet title, are we not free to conclude that by general language, if general language of sufficient breadth may be found in the act, the people intended that all questions affecting actual title, or ownership, should be merged into a Torrens proceeding? An act framed pursuant to such a purpose would lead to the issuance of a certificate of title worth having, one which would vouch to the world that the holder was the *owner* of the land described in it, that a *merchantable* title was vested in him. A statute framed without such an end in view would be of but scant value. It is to be remembered that the law, according to its title, is not purposed merely for the certification of land titles. It is also designed to provide for the simplification of the transfer of real estate and no considerable simplification results in such transfers if after obtaining a decree of the superior court that he has title to property and obtaining a certificate to that effect, one who has resorted to the procedure sanctioned by the law is compelled afterward to contend for additional decrees to secure to him a title which a buyer would accept on the market.

"We proceed now to a consideration of other features of the law. Under its terms the holder of a mortgage procured by fraud could without doubt, in a proceeding instituted by some other person to secure a registration of the fee-simple title, petition that his title under the mortgage be registered. It is equally free from doubt that one who has obtained the delivery of a deed through fraudulent practices may petition for a registration of the fee in him under it. It is clear that interested persons could present the

issue of fraud against the mortgage in the one instance and against the deed in the other, as a bar to registration. In fact, they would be bound to present it or be forever precluded from litigating the question, for under the provisions of section 16, a decree ordering registration forever quiets title and is final and conclusive against the world. These reflections demonstrate that jurisdiction is conferred by the law to rescind, or, at least, to deprive of legal effect, instruments procured by fraud. If that jurisdiction may be exercised in such instances as the two mentioned, why not in this instance?

"Although the foregoing arguments are most persuasive to our minds, so much so that we might safely base upon them a construction of the law favorable to the contentions of respondents, we have yet to notice certain provisions of section 14, stating what is to be covered by the decree ordering registration, and the provisions of section 16, announcing the force and effect to be ascribed to the decree. Under the first-named section the court is not only to *determine the title* to the land, but the title of all persons *who may have any interest in it*. It is also to determine whether the property is the separate or community property of the party *found to be the owner* and it is to enter a decree *confirming the title* of the person *found to be the owner*, whether he be the applicant or *any other person*. After all that has been said, it seems a work of supererogation to more than state the language which we have so liberally italicized. Its broad and all-inclusive character is at once apparent. We may, however, call attention to the fact that the use of the word 'title' is always without qualification or limitation, a circumstance which is characteristic of the act generally. References to *record* title are not to be found in it. The significance of the continual use of the word 'owner' in section 14 is also evident, and that word is used as well throughout the act when reference is made to the person in whose favor the decree ordering registration is rendered. All of the foregoing considerations are brought to a climax in section 16. By its terms the decree is to *forever quiet title* to the land ordered registered and it is to be *final and conclusive* as against all persons, known and unknown. The Downeys are plainly entitled to litigate the

matters presented in their application for registration and the respondents have jurisdiction over these matters.''

The application for a peremptory writ of prohibition is denied.

Lennon, J., Shurtleff, J., Wilbur, J., Lawlor, J., Waste, J., and Shaw, C. J., concurred.