[Civ. No. 3512. Third Appellate District.—April 24, 1928.]

PIONEER ABSTRACT AND TITLE GUARANTY COMPANY (a Corporation), Respondent, v. FULTON G. FERAUD et al., Appellants.

[Civ. No. 3513. Third Appellate District.—April 24, 1928.]

EMMA D. SUVERKRUP, Respondent, v. FULTON G. FERAUD et al., Appellants.

Oliver O. Clark and Dan V. Noland for Appellants.

Frank T. Bates and Walter E. Byrne for Respondent.

JAMISON, J., *pro tem.*—By stipulation of the attorneys for the respective parties these two proceedings were tried together. The petitioner in Cause No. 9265 being the Pioneer Abstract and Title Guaranty Company, a corporation, hereinafter termed the respondent, and in Cause No. 9266, the petitioner being Emma D. Suverkrup, hereinafter termed the respondent, and the parties against whom the said proceedings were had being Fulton G. Feraud, Registrar of Titles of San Bernardino County; Walter A. Shay, Sheriff of said county; E. M. Whitaker, and certain fictitious defendants termed respondents in the trial court, but hereinafter designated appellants.

Judgments were rendered in favor of each of the petitioners and against the said Feraud, as said Registrar, and against the said Shay, as Sheriff, and against the said Whitaker, and from both of said judgments said last-named parties have appealed.

Each of these proceedings was brought under the provisions of the Land Titles Act, commonly known as the Torrens Title Law, for purpose of having canceled and removed from certain certificates of registration in the office of the Registrar of Titles of San Bernardino County, certain memorials indorsed thereon by said Registrar.

Respondents offered in evidence certificate of title No. 1340, brought under first registration by certificate No. 52 on the 11th of May, 1917, by decree of the superior court of said county of San Bernardino, and standing in the

name of respondent Emma D. Suverkrup, showing her to be the owner of certain lands therein described upon which certificate appeared memorials showing judgment of *E. M. Whitaker* v. *Larchmont Investment Co. et al.*, for $49,038.53, and execution *W. A. Shay, Sheriff*, v. *Larchmont Investment Co. et al.*, date of registration of said judgment and execution being October 8, 1925.

Respondents then offered in evidence certificate of title 1350 and certificate of title 1351, standing in the name of the respondent Pioneer Abstract and Title Company, showing said company to be the owner of the lands therein described and each dated August 12, 1925, upon which appeared memorials identical with those appearing on certificate of title No. 1340.

The judgment and execution referred to in said memorials were then introduced in evidence.

The judgment being in favor of E. M. Whitaker and against Larchmont Investment Company, a common-law trust, E. A. Ely, W. W. Sears, T. M. Oehrlin and L. W. Clark, as trustees of an alleged trust estate, The Larchmont Investment Company, a copartnership composed of E. A. Ely, W. W. Sears, T. M. Oehrlin and L. W. Clark and E. A. Ely, W. W. Sears, T. M. Oehrlin and L. W. Clark as individuals, rendered by the superior court of Los Angeles County, California, dated August 11, 1925, filed for record in office of Registrar of said County of San Bernardino on October 8, 1925, and entered on said certificates of titles Nos. 1340, 1350 and 1351 by Fulton G. Feraud, Registrar of said County of San Bernardino as aforesaid.

The execution upon said judgment was issued by the clerk of said county of Los Angeles directed to the Sheriff of said County of San Bernardino, was dated August 27, 1925, and was filed for record by said Registrar on October 8, 1925, and entered on said certificates of titles 1340, 1350, and 1351 by Fulton G. Feraud, as Registrar of said County of San Bernardino, to which execution was attached the certificate of the said Walter A. Shay, Sheriff of said County of San Bernardino, that he had levied said execution upon certain lands, including those covered by said certificates 1340, 1350, and 1351.

This was all the evidence introduced by respondents. Appellants thereupon made a motion for a nonsuit. Same being

denied, they declined to offer any evidence and judgments were thereupon entered for respondents.

There being no evidence that any of the judgment debtors named in the judgment in the case of *E. M. Whitaker* v. *Larchmont Investment Co. et al.* had any interest, registered or otherwise, in the land covered by certificates of title Nos. 1340, 1350, and 1351, it appears to the court that the question to be determined is whether or not, where the lands have been registered under the provisions of the Land Title Act, an execution issued upon a judgment in an action between persons who do not have any interest in the registered land, can be levied upon said registered land and said judgment and execution filed in the office of the Registrar of Titles and entered as memorials on the certificates of title of said registered land.

Appellants claim that sections 91 and 92 of the Land Title Act furnishes ample authority to the Registrar to file the judgment and certificate of levy under the execution and to enter them as memorials upon the certificate of title covering the land levied upon under the execution.

The provisions of these two sections are as follows:

Section 91. "No judgment or decree or order of any court, shall be a lien on or in any wise affect registered land, or any estate or interest therein, until the certified copy of such judgment, decree or order under the hand and official seal of the clerk of the court in which the same is of record, is filed in the office of the registrar and a memorial of the same is entered upon the register of the last certificate of title to be affected."

Section 92. "Whenever registered land is levied upon by virtue of any writ of attachment, execution or other process, it shall be the duty of the officer making such levy, forthwith to file with the registrar a certificate of the fact of such levy, a memorial of which shall be entered upon the register; and no lien shall arise by reason of such levy until the filing of such certificate and the entry in the register of such memorial, and notice thereof, actual or constructive, to the contrary notwithstanding."

It will be noted that section 91 does not specify what judgments shall or shall not be entitled to be filed in the office of the Registrar, but merely that no judgment, decree, or order of the court shall be a lien on or in anywise affect

registered land until a certified copy thereof has been filed with the Registrar. It will also be noted that section 92 of said act provides that when any registered land is levied upon by virtue of any writ of execution the officer making the levy shall forthwith file with the Registrar a certificate of the fact of the levy, a memorandum of which shall be entered upon the register.

Upon its face this section of the act would appear to authorize the placing of the memorial of the levy upon the certificate of title regardless of whether or not any of the judgment debtors appear from the certificate of title to have any interest in the lands registered under said certificate.

However, in order to determine when and under what circumstances the officer making the levy is authorized to file with the Registrar his certificate of the fact of such levy and to determine under what circumstances the Registrar is authorized to enter a memorial of the fact of such levy upon the register the other sections of this act bearing upon this question must be examined and considered.

The only theory conceivable upon which appellant Whitaker caused the execution to be issued upon said judgment and levied upon said registered lands is that these judgment debtors, or some of them, had an interest in the said registered lands.

Respondents claim that before appellant Whitaker had the right to cause a levy to be made upon said registered lands, and before appellant Shay had the right to make said levy and before appellant Feraud had the right to file the judgment and certificate of levy and enter the same as memorials on the register, proceedings should have been taken under the provisions of the Torrens Act to have the interest or interests of the judgment debtor or debtors in said registered lands determined and registered.

Section 55 of said act is as follows:

"A deed, mortgage, lease, or other instrument purporting to convey, transfer, mortgage, lease, charge or otherwise deal with the registered land, or any estate or interest therein, or charge upon the same, other than a will or lease not exceeding one year where the land is in the actual possession of the lessee or his assigns, shall take effect only by way of contract between the parties thereto, and as authority

to the registrar to register the transfer, mortgage, lease, charge, or other dealing upon compliance with the terms of this act. On the filing of such instrument the land, estate, interest, or charge shall become transferred, mortgaged, leased, charged, or dealt with according to the purport and terms of the deed, mortgage, lease, or other instrument. The registrar shall immediately, upon the filing of such instrument, stamp or write upon the original and duplicate certificates of title the word 'transferred,' 'mortgaged,' 'leased,' or otherwise, as the case may require, with the date of filing of such instrument and sign such indorsement.''

Substantially this section means, when applied to facts appearing in the cases under consideration, that the instrument purporting to charge or otherwise deal with the registered land or other estate or interest therein, takes effect only by way of contract between the parties thereto and as authority to the registrar to register the charge or other dealing upon compliance with the terms of the act.

In other words, supposing that the said judgment debtors or any of them had an agreement with the registered owner of the lands giving to said debtor or debtors an interest in said registered land, which interest is unregistered, in that event it would be effective between the parties only as a contract until those things were done that are required by the act to be done to entitle it to be registered.

To gather the meaning of the words ''upon compliance with the terms of this act,'' as used in section 55, we must look to other sections of this act. Section 60 is as follows:

''On the filing of an instrument intended to create a charge in the registrar's office and upon the production of the duplicate certificate of title, whenever it appears from the original certificate of title that the person intending to create the charge has the title and right to create such charge and the person in whose favor the same is sought to be created is entitled by the terms of this act to have the same registered, the registrar shall enter upon the original and duplicate certificates a memorial of the purport thereof, and the date of filing the instrument, with a reference thereto by its file number, which memorial shall be signed by the registrar. The registrar shall also note upon the instrument on file the number of the certificate of title where the me-

morial is entered. No new certificate of title shall be entered and no memorandum shall be made upon any certificate of title by the registrar in pursuance of any deed or other voluntary instrument, unless the owner's duplicate certificate of title is presented with such instrument, except in cases expressly provided for in this act, or upon the order of the court, for cause shown, and whenever such order is made, a memorial thereof shall be entered upon the new certificate of title and on the owner's duplicate. The production of the owner's duplicate certificate, whenever a voluntary instrument is presented for registration, shall be conclusive authority from the registered owner to the registrar to issue a new certificate or to make a memorial in accordance with such instrument and the new certificate or the memorial shall be binding upon the registered owner and upon all persons claiming under him in favor of every purchaser for value in good faith.''

This section provides a method showing such compliance with the terms of the act as would entitle the unregistered interest in land, or charge upon the same, to be registered. Section 98 of the act provides that a registered owner, or other person in interest, or the registrar may at any time apply by petition to the court upon the ground that the registered interests of any description, whether vested, contingent, expected, or inchoate, have terminated or ceased, or that new interests have arisen or been created which do not appear upon the certificate, for an order correcting or altering any certificate to comply with the true facts as shown by the petition and proof adduced and the court shall have jurisdiction to hear and determine the petition after notice to all parties in interest, and if it appears to the satisfaction of the court that the relief as petitioned for should be granted, it shall order and direct the registrar to make such correction or modifications on such certificates or memorials as may be necessary.

By the provisions of these two sections, we have methods by means of which the instrument purporting to charge or otherwise deal with the registered land, or other estate or interest therein, and which takes effect only by way of contract between the parties, may be made to comply with the terms of this act and become entitled to registration.

Thompson, in his work on Real Property, volume 5, section 4154, says that Sir Robert Torrens, who formulated the system of judicial registration of land titles, known as the Torrens System, stated that the purposes of the law which he advocated are "to simplify, quicken and cheapen the transfer of real estate and to render titles safe and indefeasible." These objects he planned should be accomplished by means of registration of title and the use of certificates which conclusively show the state of the title at all times.

In the case of *Robinson* v. *Kerrigan*, 151 Cal. 40 [121 Am. St. Rep. 90, 12 Ann. Cas. 829, 90 Pac. 129], where the constitutionality of this act was upheld, the Supreme Court stated that the purpose of the act was to establish a system for the registration of title to land whereby the official certificate will always show the state of the title and the person in whom it is vested.

In the case of *In re Seick*, 46 Cal. App. 363 [189 Pac. 314], it was said that the act provided a complete scheme of procedure whereby, through a decree of the court, land may be brought under the operation of the act. "So that an intending purchaser, lessee, or mortgagee, or other person having dealings with the property, may go to the registrar's office, examine the leaf whereon the title to that property is registered, and at once, with safety, take a deed, lease, or mortgage from the owner of the property, file it, and have himself accordingly registered upon the leaf or folium as owner, lessee, or mortgagee."

█ The purpose of the Torrens Land Act is not only to create and perpetuate a marketable title to land sought to be registered in the true owner thereof, but also to enable the registration of every tract in such a way that all interests therein may be disclosed by the registration. (*Title Guarantee & Trust Co.* v. *Griset,* 189 Cal. 382 [208 Pac. 673]; *Francis Investment Co.* v. *Supreme Court,* 189 Cal. 107 [208 Pac. 105].)

In this last-named case, at page 116, in speaking of the benefit derived by the owner of land registered under the Torrens Act, the court said: "An act framed pursuant to such a purpose would lead to the issuance of a certificate of title worth having, one which would vouch to the world that the holder was the owner of the land described

in it, that a merchantable title was vested in him. A statute framed without such an end in view would be of but scant value. It is to be remembered that the law, according to its title, is not purposed merely for the certification of land titles. It is also designed to provide for the simplification of the transfer of real estate and no considerable simplification results in such transfers if, after obtaining a decree of the superior court, that he has the title to the property and obtaining a certificate to that effect, one who has resorted to the procedure sanctioned by law is compelled afterwards to contend for additional decrees to secure him a title which a buyer would accept on the market.''

Unquestionably, it was the intention of the framers of this act that at all times the certificate of title of the owner of registered lands should show the exact status of the lands described in the certificates, that if there were memorials entered upon the certificate of title showing charges or other dealings against or with the registered lands, then the nature, extent and amount of such charges or dealings should be specifically set forth.

Assuming that the judgment debtors in the aforesaid judgment claim some interest in the lands covered by the said certificates of title, there is no way of ascertaining or determining, from an inspection of these certificates, as they now stand, what the nature and extent of that interest is. The effect of this is that the title of the registered owner to said lands is thereby rendered uncertain, indefinite and unmerchantable.

It appears to the court that to permit a judgment rendered in an action between strangers to the registered land to be filed and entered as a memorial upon the certificates of title of said registered land and the certificate of levy thereon under an execution issued under said judgment to be also filed as a memorial on said certificates of title, there being nothing to indicate that the judgment debtors had any interest in said registered lands, nor anything indicating the extent of such interest, would be to nullify one of the important purposes for which said Torrens Law was enacted.

Section 98 of the act authorizes the registered owner of the land to apply by petition to the court for the cancella-

tion of any memorandum on a certificate when the same has been placed there by error or mistake.

A consideration of this act clearly shows that it was the intention of its framers that no memorial, charge or lien should be entered upon the register without first complying with its terms and requirements.

To permit a practice that would sanction the unauthorized placing of said judgment and certificate of levy upon the register, that is to say, upon the certificates of title of respondents would, as was said by the court in *Curtis* v. *Hass*, 298 Ill. 485 [131 N. E. 701], necessarily invite other such unauthorized acts of the registrar, which would precipitate a multiplicity of suits to protect the rights of the registered owner.

The trial court was right in denying the motion for a nonsuit.

The judgments are supported by the findings, nor are the findings inconsistent or contradictory.

The judgment in each of the cases is affirmed.

Plummer, J., and Hart, Acting P. J., concurred.